UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | RECEIPT # _____ |
| ) | AMOUNT $ N/A |
| LES B. STRAUSS, ) | SUMMONS ISSUED N/A |
| ) | LOCAL RULE 4.1 ____ |
| Defendant. ) | WAIVER FORM ____ |
| ) | MCF ISSUED ____ |
|  | BY DPTY. CLK. PSS |
|  | DATE 3/28/02 |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges the following against defendant Les B. Strauss ("Strauss"):

## SUMMARY

1. This enforcement action involves Strauss' failure to ensure that effective internal accounting controls were maintained at PictureTel Corp. ("PictureTel"), a company based in Andover, Massachusetts whose business involves the design and manufacture of videoconferencing systems. PictureTel materially overstated its revenues and net income for 1996 and 1997 by approximately $17.8 million in public announcements and in financial statements filed with the Commission. Because of this overstatement of revenues and net income, PictureTel falsely reported record performance in 1996 and concealed the decline of its performance in 1997.



2. Strauss was the chief financial officer ("CFO") of PictureTel, and the improper accounting was made possible by his failure to ensure that PictureTel maintained effective financial controls. Specifically, Strauss made organizational changes at PictureTel that significantly weakened the company's internal accounting controls. He realigned reporting responsibilities and caused PictureTel's credit and collections department to report directly to Leonard J. Guida, then its Vice President of Finance, Worldwide Sales and Service ("Guida"). He also gave Guida increased authority to develop business by negotiating the terms of sales transactions, while continuing to allow Guida to have the authority to recognize revenue. These organizational changes eliminated the separation between sales and finance functions, which had previously acted as an internal control at PictureTel, and vested Guida with unchecked authority to negotiate contracts, extend credit terms, and determine when revenue would be recognized. Unfortunately, Guida abused his authority by improperly recognizing revenue from purported sales even though he had entered into undisclosed side agreements whereby the purported purchasers were not required to pay for the equipment until it was sold to end users. In addition, Strauss further weakened PictureTel's internal controls by increasingly detaching himself from the day-to-day financial operations of the company and delegating significant authority to others, without ensuring that the delegated responsibilities were properly performed.

3. By engaging in the transactions and practices alleged in this Complaint, Strauss: (i) failed to implement a system of internal accounting controls at PictureTel, in violation of Section 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 13b2-1 thereunder; and (ii) aided and abetted PictureTel's violations of its reporting and record-keeping obligations under

Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder.

4. Accordingly, the Commission seeks the imposition of a civil monetary penalty against Strauss.

## JURISDICTION AND VENUE

5. The Commission seeks the imposition of a civil monetary penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

6. This Court has jurisdiction over this action pursuant to Sections 21 and 27 of the Exchange Act [15 U.S.C. §§78u and 78aa]. Venue is proper in this District because the acts and practices alleged in this Complaint occurred primarily within Massachusetts.

7. In connection with the conduct described in this Complaint, Strauss directly and indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

## DEFENDANT AND RELEVANT ENTITY

8. **Strauss**, age 58, is a resident of Wellington, Florida. He joined PictureTel in 1990 as CFO. He retired in May 1997. He is currently a self-employed consultant and is a director of various private companies.

9. **PictureTel** is a Delaware corporation based in Andover, Massachusetts. It designs and manufactures videoconferencing equipment. During the relevant period, its securities were registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. §78k(g)]

and were traded on the NASDAQ National Market System. On October 23, 2001, Polycom, Inc. acquired PictureTel's outstanding common stock for a combination of Polycom stock and cash. PictureTel continues to operate as a separate division of Polycom.

## STATEMENT OF FACTS

### PictureTel's Improper Revenue Recognition

#### Background

10.     PictureTel's misstatements of revenue and income resulted primarily from several transactions that Guida negotiated with PictureTel's leasing agent, El Camino Resources Ltd. ("El Camino"). During the second half of 1996 and the first half of 1997, Guida and El Camino negotiated more than $10 million in sales transactions from which PictureTel improperly recognized revenue.

11.     In its standard transactions with PictureTel, El Camino provided financing to PictureTel customers by purchasing PictureTel products and then leasing them to end users. During their negotiations in late 1996 and early 1997, Guida agreed that El Camino would not be obligated to pay PictureTel unless a third party leased or purchased the products from El Camino. PictureTel nevertheless recorded these transactions as sales and recognized revenue from them. This was improper because the transactions did not comply with GAAP for revenue recognition, as there were no firm commitments, by anyone, to pay for the equipment.

#### The Demo Program Agreement

12.     In June 1996, Guida and El Camino entered into an agreement (the "Demo Program Agreement") whereby El Camino would obtain used videoconferencing equipment from PictureTel and

4

make the equipment available to prospective end users on a short-term trial basis.  The Demo Program Agreement, which was memorialized in two written agreements between PictureTel and El Camino, contained several departures from PictureTel's standard master lease agreement with El Camino.  Most significant were the absence of any requirement that El Camino actually pay for the equipment and a guarantee that El Camino would receive a 17.5% profit, either through direct payments by PictureTel or through PictureTel's repurchase of any equipment not sold to end users.  Even though El Camino was not required to pay for the equipment, PictureTel improperly recorded $2.3 million of revenue from the transaction in the third quarter of 1996 and an additional $444,000 in the fourth quarter of 1996.

### The Department of Justice Transaction

13.    During December 1996, PictureTel was negotiating with the U.S. Department of Justice ("DOJ") concerning the possible sale of videoconferencing equipment worth $1.2 million.  As of December 31, 1996, however, the negotiations had not been completed.  Nevertheless, at 3:30 p.m. that afternoon, Guida obtained a purchase order from El Camino for equipment that would purportedly be leased to the DOJ.  The purchase order was not a *bona fide* order for goods but rather a fiction to enable PictureTel to record revenue before year-end.  Indeed, El Camino had not been involved in the DOJ negotiations, and the DOJ was not even authorized to procure the equipment by lease.  Nevertheless, PictureTel improperly recognized $1.2 million in revenue from this transaction for the 1996 fiscal year.

### The Texas Dealer Transaction

14.  On March 27, 1997, PictureTel received a $2.2 million purchase order from a dealer in Texas. The purchase order carried a notation by one of the dealer's principals that the company's obligation to pay for the equipment was contingent of El Camino's "acceptance". This notation referred to El Camino's willingness to finance the end users' acquisition of the equipment, as the dealer could not afford to pay for the equipment itself. PictureTel, El Camino and the dealer continued to negotiate after that date, but no agreement to purchase or lease the equipment ever resulted. Nevertheless, PictureTel recognized $2.2 million in revenue from the transaction in the first quarter of 1997.

### The Bill and Hold Transactions

15.  Between July 1996 and June 1997, PictureTel recognized $4.6 million of revenue from 88 so-called "bill and hold" transactions. In each instance, revenue recognition was improper because the customer did not take possession of the equipment or assume the risk of loss, as storage and insurance obligations remained with PictureTel.

### PictureTel's Materially Misstated Financial Results for 1996 and 1997

16.  On October 16, 1996, PictureTel issued a press release reporting revenues of $121.3 million, net income of $8.9 million, and earnings of $0.25 per share for the third quarter of 1996. The revenue, net income and earnings results each established new quarterly records for the company, and the reported earnings exceeded analysts' expectations by $0.02 per share. However, without the improperly recorded revenue, PictureTel would have reported earnings per share of $0.17, an amount $0.06 per share *below* analysts' expectations. On November 12, 1996, the Company filed a Form 10-Q for the third quarter that contained the same financial information.

17. On February 12, 1997, PictureTel announced record revenues for the year ended December 31, 1996 of $482.5 million, a 39% increase over the prior year. The company also reported earnings per share of $0.96. Net income for 1996 rose 77% to a record $34.8 million. On March 31, 1997, the Company filed with the Commission its annual report on Form 10-K which reported the same revenue and earnings figures as the February earnings release. Without the improperly recorded revenue, PictureTel's would have reported earnings per share of $0.85.

18. On April 16, 1997, PictureTel announced that it had earned revenues of $118.2 million and net income of $3.1 million for the quarter ended March 29, 1997. In the first quarter of 1997, PictureTel earned $0.09 per share as compared to analyst estimates of $0.20 per share. On May 13, 1997, the Company filed a Form 10-Q with the Commission for the third quarter that contained the same financial information. Without the improperly recorded revenue, PictureTel would have reported earnings per share of $0.07.

## PictureTel's Restatements of its Financial Results

19. Strauss resigned as CFO in May 1997. In August 1997, PictureTel's new CFO began to uncover the improper accounting described above. He related his concerns to PictureTel's outside auditors, who commenced an investigation of PictureTel's revenue recognition practices.

20. On September 19, 1997, PictureTel announced that it was going to restate its financial results for the third quarter of 1996, the fiscal year 1996, and the first quarter of 1997. Following that announcement, PictureTel's stock declined approximately $1.31 (more than 10%) to $11.50 per share. On November 13, 1997, PictureTel announced that it was also going to restate its results for the

second quarter of 1997. On January 13, 1998, PictureTel issued the restatement of its financial results for all four reporting periods.

21. PictureTel restated its revenues as follows:

| Period | Reported (000s) | Restated (000s) | Reduction (000s) | Reduction (%) |
|---|---|---|---|---|
| 3rd Quarter 1996 | $127,926 | $120,785 | $7,141 | 5.9% |
| 4th Quarter 1996 | $146,281 | $138,695 | $7,586 | 5.5% |
| Fiscal Year 1996 | $504,952 | $490,225 | $14,727 | 3.0% |
| 1st Quarter 1997 | $123,618 | $121,935 | $1,683 | 1.4% |
| 2nd Quarter 1997 | $119,304 | $117,966 | $1,338 | 1.1% |

22. PictureTel restated its net income as follows:

| Period | Reported (000s) | Restated (000s) | Reduction (000s) | Reduction (%) |
|---|---|---|---|---|
| 3rd Quarter 1996 | $9,600 | $6,884 | $2,716 | 39.5% |
| 4th Quarter 1996 | $10,021 | $8,680 | $1,341 | 15.4% |
| Fiscal Year 1996 | $36,229 | $32,172 | $4,057 | 12.6% |
| 1st Quarter 1997 | $2,494 | $2,011 | $483 | 24.0% |
| 2nd Quarter 1997 | ($3,671) | ($4,900) | $1,229 | 25.1% |

23. When PictureTel restated its financial results, it reversed all of the revenue recognition items described above and also corrected other accounting errors not attributable to Guida.

**Strauss and PictureTel's Lack of Internal Controls**

24. PictureTel's improper financial reporting during 1996 and 1997 occurred because the company had insufficient internal accounting controls in place to detect and deter fraud. As PictureTel's CFO, Strauss was responsible for ensuring that the company had the necessary accounting controls in place. He failed to exercise this responsibility properly and instead created an internal reporting structure that allowed PictureTel's accounting improprieties to occur.

25. Beginning in early 1996 and continuing through mid-1997, Strauss made organizational changes that caused PictureTel to have inadequate internal controls. In early 1996, he caused the credit and collections department to report to Guida, rather than to the head of the treasury department. This organizational change eliminated an important check-and-balance that previously had existed at the company as a result of the separation between sales and finance functions.

26. Strauss also lessened the effectiveness of PictureTel's internal controls by delegating more and more responsibility to others. By September 1996, he had assigned more responsibilities to Guida, including responsibility for negotiating and approving sales contracts and for developing relationships with new customers, while at the same time continuing to delegate responsibility for revenue recognition to Guida.

27. Around the same time, Strauss privately told PictureTel's chief executive officer that he intended to retire. Strauss became more and more removed from the day-to-day activities at PictureTel and spent more time working out of his home in Vermont. He rarely met with the controllers who reported to him, including Guida. He stopped conducting quarterly closing meetings with his staff and no longer closely reviewed sales transactions, as he had previously done. Supervisory control procedures such as monitoring Guida's deal-making efforts or holding quarterly closing meetings would

9

likely have prevented the recording of several of the reversed transactions. As a result of Strauss's actions, PictureTel failed to have adequate internal controls.

28. Strauss continued to delegate unchecked authority to Guida even after receiving warnings about his conduct. Beginning in the fall of 1996, PictureTel's chief accounting officer ("CAO") became concerned about the Demo Program Agreement and concluded that revenue from that transaction should have been recognized in the fourth quarter of 1996 instead of the third quarter. On December 13, 1996, the CAO provided a memo to Strauss summarizing his conclusions. Strauss took no action to address the matter with Guida.

29. During the fall of 1996, Strauss also was informed by a PictureTel attorney that Guida had signed a non-standard sales contract with a customer and had not provided it to the legal department for review and approval, as required by company policy. Strauss verbally reprimanded Guida but took no further action to discipline him or impose checks on him.

30. In January 1997, a PictureTel attorney met with Strauss and raised additional concerns about Guida's revenue recognition practices. Strauss still took no additional action to ensure that Guida was properly performing the duties that had been delegated to him.

31. In early February 1997, PictureTel's outside auditors informed Strauss that Guida's responsibility for both revenue recognition and credit and collections presented a potential internal controls weakness. Nonetheless, Strauss took no measures to address the auditors' concerns.

32. In April 1997, during its review of PictureTel's first quarter revenue, the outside auditors again advised Strauss of their concerns regarding the transaction with the Dealer. Strauss was aware of the contingency on the Texas dealer's purchase order and of a purported escrow arrangement

that Guida allegedly had negotiated to ensure payment. In reliance upon and without verifying Guida's representations (either on his own or through his accounting staff), Strauss acquiesced in Guida's conclusion that the $2.2 million sale to the Texas dealer was good revenue and that there was a high likelihood of payment.

## FIRST CLAIM FOR RELIEF
### (Violation of Section 13(b)(5) of the Exchange Act and Rule 13b2-1)

33. The Commission repeats and incorporates by reference the allegations in paragraphs 1-32 of the Complaint as if set forth fully herein.

34. Strauss's conduct as herein alleged constituted violations of Section 13(b)(5) of the Exchange Act [15 U.S.C. §78m(b)(5)] and Rule 13b2-1 thereunder [17 C.F.R. §240.13b2-1].

35. Strauss's conduct as herein alleged justifies the imposition of a civil penalty within the meaning of Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

## SECOND CLAIM FOR RELIEF
### (Causing PictureTel's Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13)

36. The Commission repeats and incorporates by reference the allegations in paragraphs 1-35 of the Complaint as if set forth fully herein.

37. PictureTel's conduct as alleged herein constituted violations of Section 13(a) of the Exchange Act [15 U.S.C. §78m(a)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§240.12b-20, 240.13a-1, 240.13a-13].

38. Strauss knew or should have known that his conduct as herein alleged would aid and abet PictureTel's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder.

39. Strauss's conduct as herein alleged justifies the imposition of a civil penalty within the meaning of Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

### THIRD CLAIM FOR RELIEF
(Causing PictureTel's Violations of
Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act)

40. The Commission repeats and incorporates by reference the allegations in paragraphs 1-39 of the Complaint as if set forth fully herein.

41. PictureTel's conduct as alleged herein constituted violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §78m(b)(2)(A)] and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §78m(b)(2)(B)].

42. Strauss knew or should have known that his conduct as herein alleged would aid and abet PictureTel's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

43. Strauss's conduct as herein alleged justifies the imposition of a civil penalty within the meaning of Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A.  Enter a final judgment ordering Strauss to pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]; and

B.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

_/s/ Frank C. Huntington_
Juan Marcel Marcelino
District Administrator

Frank C. Huntington
Senior Trial Counsel (Mass. Bar No. 544045)

Gary T. Grassey
Branch Chief (Mass. Bar No. 636687)

Gregory S. Gilman
Senior Enforcement Attorney (Mass. Bar No. 559106)

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
73 Tremont Street, Suite 600
Boston, MA  02108
(617) 424-5900  ext. 201 (Huntington)
            ext. 635 (Gilman)
(617) 424-5940  fax

Dated:  March 28, 2002